UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                   Case No. 2:15-cr-20329-04

v.                                     HON. STEPHEN J. MURPHY, III

TORIONO HUMPHREY,

    Defendant.

                                          /

**ORDER DENYING TORIONO
HUMPHREY'S MOTION TO SEVER** (document no. 110)**,
AND DENYING MOTION TO COMPEL DISCLOSURE OF WITNESS LIST,
EXHIBIT LIST, AND ADDITIONAL WITNESS INFORMATION** (document no. 108)

    Defendant Toriono Humphrey is charged with conspiring to distribute heroin, cocaine and marijuana. Indict., ECF No. 1. Humphrey moved the Court to sever his trial from that of his six co-defendants. Mot., ECF No. 110. Additionally, Humphrey seeks to compel the Government to disclose its witness list, exhibit list, and recorded witness statements. Mot., ECF No. 108. No hearing is necessary. For the reasons stated below, the Court will deny the motions.

**BACKGROUND**

    The Government alleges the following: on April 17, 2012, U.S. Customs and Border patrol agents searched a semi-truck trailer crossing from Mexico and discovered 1600 kilograms of marijuana in sealed containers, intermixed with frozen strawberries. Resp. 2–3, ECF No. 119. The truck was bound for a warehouse in Oak Park, Michigan. Both Humphrey and his co-defendant Alvin Matheney were connected to the warehouse. On April 23, 2012,

agents conducted a controlled delivery of the truck to the warehouse. Later, agents executed a search warrant on the warehouse and seized the marijuana.

On April 26 and May 2, 2012, federal agents interviewed Matheney. *Id.* at 3–4. He admitted to using the alias "Al Baker" to rent the warehouse. Matheney told agents that "an individual he knew as 'Tony'" contacted him to rent out the warehouse space. Matheney said he was familiar with "Tony" but did not know his last name. According to Matheney, he and "Tony" had engaged in smaller scale drug transactions previously. Additionally, Matheney told agents "Tony" needed a space with a walk-in freezer for receiving shipments of frozen food. *Id.* Matheney stated that "Tony" had "work" and was planning on adding "work" to the food orders. The agents understood the term "work" to refer to the buying and selling of illegal drugs. Matheney told agents he coordinated the lease of the warehouse and took cash from "Tony" for lease payments and for the construction of a walk-in freezer.

Now, Humphrey seeks a separate trial from Matheney and the other co-defendants. Mot., ECF No. 110. Also, in a separate motion, Humphrey seeks to compel disclosure of Government witness lists, exhibit lists, and witness statements. Mot., ECF No. 108.

## DISCUSSION

I. Motion to Sever

"Federal courts strongly favor joint trials because [t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Breinig*, 70 F.3d 850, 852–53 (6th Cir. 1995) (quotations omitted). Also, joint trials promote judicial economy because "there is almost always common evidence against the

joined defendants[.]" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quotations omitted). So as a general rule, persons indicted together "should be tried together." *Id.*

If joinder would "prejudice a defendant," however, the Court may "sever the defendants' trials." Fed. R. Crim. P. 14(a). But "defendants are not entitled to a separate trial simply because they may have a better chance of acquittal if they were tried alone." *Breinig*, 70 F.3d at 853. Instead, severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Lopez*, 309 F.3d at 971.

Challenges to joinder often arise when the Government offers as evidence a co-defendant's out-of-court statement; the statement inculpates another defendant; the co-defendant does not testify; and the defendant is unable to confront the co-defendant in the crucible of cross-examination. *See e.g. Bruton v. U.S.*, 391 U.S. 123, 135–36 (1968); *see also* U.S. Const. amend. VI (providing the right of the accused "to be confronted with the witnesses against him."). In that type of case, severance is warranted if the "codefendant's statement [] facially incriminates the defendant." *United States v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007).

But a co-defendant's "statements that incriminate only inferentially" do not violate the Confrontation Clause. *Id.* For instance, "where the defendant's name is redacted and a neutral term is substituted," no Confrontation Clause violation occurs and severance is unwarranted. *Id.* at 408. Similarly, when a co-defendant's statement only "becomes incriminating when linked with other evidence adduced at trial" there is no Confrontation Clause violation and thus

3

no need for severance. *United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014) (quotations omitted).

Here, Humphrey contends that he will be incriminated by co-defendant Matheney's statement to agents. Mot., ECF No. 110. If Matheney does not testify at trial, Humphrey will be unable to cross-examine him regarding the incriminating statement. The Court should grant a severance, Humphrey concludes, to prevent a Confrontation Clause violation. *Id.*

The Court has a strong preference for trying Humphrey and Matheney together, since they were indicted together, and both cases will involve the same witnesses giving testimony about the warehouse and the marijuana. And Humphrey has not shown that joinder will result in a potential Confrontation Clause violation. Matheney's statement does not facially incriminate Humphrey. Instead, the statement identifies "Tony" as the man who paid to lease the warehouse and build the walk-in freezer. At most, Matheney's statement — when combined with other evidence at trial — may inferentially incriminate Humphrey. But inferential incrimination does not violate the Confrontation Clause and thus does not warrant severance. Accordingly, the Court will deny Humphrey's motion to sever.

## II. Motion to Compel

Humphrey seeks to compel disclosure of the Government's witness list, exhibit list, and all recorded witness statements. Mot. 9, ECF No. 108. He argues that he needs to know witness identities to adequately prepare for trial and that withholding this information places him at an "unjustifiable disadvantage." Mot. 1–6, ECF No. 108. In response, the Government argues that disclosure is not required by law. Resp., ECF No. 115. Also, the Government notes that Humphrey has a long history of thwarting application of the law — spending nine

4

years as a fugitive — and therefore could reasonably be expected to use early disclosure of witness identities to disrupt the trial. *See id.*

The Government is not obligated to disclose witness identities before trial. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) ("Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses."); *see also* Fed. R. Crim. P. 16; E.D. Mich Standing Order for Discovery, No. 03-AO-027, p.2 (Oct. 2003) (government counsel shall not be "required to automatically disclose the names of government witnesses"). Here, the Government plans to disclose witness lists seven days before trial, *see* Resp. 2, ECF No. 115, in accordance with the law. Humphrey has not shown any reason the Court should disregard the standing order or Sixth Circuit precedent. Therefore, the Court will not compel disclosure of witness lists prior to the Government's anticipated schedule.

Also, the Government has no obligation to disclose witness statements before trial. 18 U.S.C. § 3500(a). The Jencks Act provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness . . . shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." *Id.* Defendants do not possess "a general right to pre-trial discovery of evidence impeaching defense witnesses, where the prosecution denies that any such material is exculpatory and material under *Brady*." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). And "[i]f impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence" and "the government may not be compelled to disclose Jencks Act material before trial." *Id.* At a recent status conference in the case, the

5

Government represented it would provide Jencks Act material in sufficient time for the defense to meaningfully prepare its cross examinations. Accordingly, the Court will not compel disclosure of witness statements unusually early in the case.

Lastly, the Government plans to provide exhibit lists in accordance with the Court's standing order that "[e]ach party shall thereafter prepare a typed list of proposed exhibits for the submission to the Court three (3) days prior to the commencement of trial." E.D. Mich. Standing Order for Discovery, No. 03-AO-027, p.2-3 (Oct. 2003). Since Humphrey has offered no authority or reason to depart from the Court's standing order, the Court will not compel disclosure of exhibit lists now.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Severance (document no. 110) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Compel Disclosure of Witness List, Exhibit List, and Additional Witness Information in Advance of Trial (document no. 108) is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 25, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2016, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager